IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVE TRONSGARD & MEDBOR
CHAVEZ, individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

FBL FINANCIAL GROUP, INC., et al.,

      Defendants.

Case No. 17-2393-DDC-JPO

## MEMORANDUM AND ORDER

Plaintiffs Steve Tronsgard and Medbor Chavez are former insurance agents for defendants—a group of entities that plaintiffs call "the Farm Bureau family of companies." Doc. 41 at 12. The four defendants named in plaintiffs' Complaint are: (1) FBL Financial Group, Inc. ("FBL Financial"); (2) Farm Bureau Property & Casualty Insurance Co. ("FBP&C"); (3) Farm Bureau Life Insurance ("FB Life"); and (4) Western Agricultural Insurance Company ("WAIC"). Plaintiffs allege that defendants improperly classified them during their employment as independent contractors instead of employees. And plaintiffs, both individually and on behalf of all others similarly situated, bring this lawsuit asserting claims arising from defendants' alleged misclassification.

Defendants have responded to the lawsuit by filing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiffs' First Amended Class Action Complaint fails to state a claim for relief. Doc. 31. Plaintiffs filed an Opposition to that motion. Doc. 41. And defendants submitted a Reply. Doc. 54. After the briefing closed, the court granted plaintiffs' motion to file a surreply and also permitted defendant to file a sur-surreply.

Doc. 59. On January 23, 2018, plaintiffs filed their Surreply. Doc. 60. And on January 31, 2018, defendants filed their Sur-surreply. Doc. 62. The matter, to say the least, is fully briefed, and the court is prepared to rule. After considering the arguments and authorities presented in the parties' papers,[1] the court grants defendants' Motion to Dismiss in part and denies it in part. The court explains why below.

## I.       Factual Background

The following facts are taken from plaintiffs' First Amended Class Action Complaint ("Complaint"). Doc. 23. The court accepts the facts asserted in the Complaint as true and views them in the light most favorable to plaintiffs. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

From 2003 to 2014, plaintiff Steve Tronsgard worked as a Farm Bureau insurance agent in Kansas. From 2014 to 2016, plaintiff Medbor Chavez worked as a Farm Bureau insurance agent in Kansas. Both plaintiffs signed an Agent Contract that classified them as independent contractors, not employees. But, in reality, defendants retained the right to control the manner, method, and means of virtually every facet of their insurance agents' work. Defendants did so by imposing various regulations, policies, and procedures that governed all its insurance agents. Thus, plaintiffs contend, defendants misclassified plaintiffs and other similarly situated insurance agents as independent contractors. And through this practice of misclassification, plaintiffs allege, defendants shirked their legal obligations to provide health, retirement, and other benefits to its insurance agents while reaping the economic benefits of its captive workforce.

---

[1]      Earlier, the court denied plaintiffs' Unopposed Motion for Oral Argument, but without prejudice. Doc. 59. The court noted that it may request oral argument sometime in the future and at its discretion if it determined that it would assist the court's consideration of the issues. *Id.* After considering the parties' written submissions, the court finds that they explain the parties' positions quite effectively. The court thus concludes that oral argument would not assist its work.

Plaintiffs' Complaint asserts that defendants' misclassification gives rise to six causes of action: (1) Racketeer Influenced and Corrupt Organization Act ("RICO") violations under 18 U.S.C. §§ 1341, 1343, 1962(c); (2) Employee Retirement Income Security Act ("ERISA") violations under 29 U.S.C. § 1132(a)(1)(B); (3) Kansas Wage Payment Act ("KWPA") violations under Kan. Stat. Ann. §§ 44-313 *et seq.*; (4) quantum meruit/rescission; (5) unjust enrichment; and (6) declaratory relief. Defendants assert that none of these claims states a plausible cause of action. Defendants thus ask the court to dismiss plaintiffs' Complaint under Rule 12(b)(6). The court considers defendants' request below.

## II.    Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained simply, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188,

1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering whether a plaintiff has stated a plausible claim, the court must assume that the complaint's factual allegations are true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). But, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

When deciding the motion to dismiss here, the court considers plaintiff Tronsgard's January 1, 2013 Farm Bureau Property & Casualty Insurance Company/Western Agricultural Insurance Company Agent Contract ("Agent Contract") (Doc. 23-1). It does so because plaintiffs refer to the Agent Contract in their Complaint, and they have attached it to the Complaint as an exhibit. *See* Doc. 23 ¶¶ 43–45, 53, 57–58, 79, 118–24; Doc. 23-1 (the Agent Contract). The Agent Contract also is central to plaintiffs' claims, specifically plaintiffs' RICO claim (*see* Doc. 23 ¶¶ 118–24). The parties do not dispute its authenticity. For all these reasons,

the court considers the Agent Contract when deciding defendants' Motion to Dismiss under Rule 12(b)(6).

### III.    Analysis

Defendants ask the court to dismiss plaintiff's claims for four reasons. First, defendants argue that the statute of limitations bars each of plaintiff Tronsgard's claims. Second, defendants assert that plaintiffs' ERISA claims fail as a matter of law because plaintiffs have not pleaded exhaustion of administrative remedies. Third, defendants contend that plaintiffs' Complaint fails to state a plausible RICO claim. Finally, defendants argue, plaintiffs' Complaint fails to state a plausible claim for quantum meruit/rescission.[2] The court addresses each argument, below. The court begins with the RICO claim.

### A.  Have Plaintiffs Stated a Plausible RICO Claim?

Defendants assert that plaintiffs' Complaint fails to state a violation of RICO. Subsection 1962(c) of RICO makes it:

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Subsection 1962(d) makes it "unlawful for any person to conspire to violate" subsection 1962(c). *Id.* § 1962(d). RICO provides a private civil cause of action for those who are injured by violations of § 1962 and allows recovery of treble damages, costs, and attorney fees. *Id.* § 1964(c).

When addressing plaintiffs' RICO claim below, the court is mindful that "RICO is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985). "To successfully

---

[2]     Defendants also assert that plaintiffs' claim for declaratory relief fails as a matter of law. Doc. 32 at 38. But plaintiffs' Opposition concedes that claim. Doc. 41 at 13. So, the court grants defendants' motion to dismiss in part, dismissing plaintiffs' declaratory relief claim (Count VI).

state a RICO claim, a plaintiff must allege four elements:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (citations and internal quotation marks omitted).  Defendants argue that plaintiffs' RICO claim falls short of these elements for several reasons:  (1) plaintiffs fail to allege a sufficient predicate act; (2) plaintiffs have not alleged a RICO enterprise; (3) plaintiffs have not alleged sufficiently that the members of the enterprise associated together for a common fraudulent purpose; and (4) plaintiffs have not alleged sufficiently defendants' participation in the conduct of the alleged enterprise.

The court agrees that plaintiffs' Complaint fails to state a plausible RICO claim for at least three of these reasons.  Each one of the three provides an independent basis for the court to dismiss plaintiffs' RICO claim under Rule 12(b)(6).[3]  The court addresses each reason in the following subsections.

### 1.   Plaintiffs' Complaint fails to allege facts capable of supporting a finding or inference that defendants committed a RICO predicate act.

Defendants assert that plaintiffs' Complaint fails to allege a predicate act capable of supporting a plausible RICO claim.

"'RICO is founded on the concept of racketeering activity.'"  *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016)).  "The statute defines 'racketeering activity' to encompass dozens of state and federal offenses, known in RICO parlance as predicates."  *Id.* (quoting *RJR*, 136 S. Ct. at 2097).  "'These predicates include any act "indictable" under specified federal

---

[3]        Because plaintiffs' Complaint fails to state a plausible RICO claim under § 1962(c), it also fails to state a RICO conspiracy claim under § 1962(d).  *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law.").

statutes . . . . '" *Id.* (quoting *RJR*, 136 S. Ct. at 2096 (quoting 18 U.S.C. § 1961(1))).  Such acts

include those "indictable" under 18 U.S.C. "section 1341 (relating to mail fraud)" and "section

1343 (relating to wire fraud)."  18 U.S.C. § 1961(1)(B).

Here, plaintiffs' Complaint alleges that defendants engaged in a pattern of racketeering

activity involving mail fraud and wire fraud.  Doc. 23 ¶¶ 9, 117, 138.  "To support the mail and

wire fraud allegations, the plaintiffs must plausibly allege 'the existence of a scheme or artifice

to defraud or obtain money or property by false pretenses, representations or promises,' and that

[defendants] communicated, or caused communications to occur, through the U.S. mail or

interstate wires to execute that fraudulent scheme." *George v. Urban Settlement Servs.*, 833 F.3d

1242, 1254 (10th Cir. 2016) (quoting *Tal*, 453 F.3d at 1263).  "And because Fed. R. Civ. P. 9(b)

requires a plaintiff to plead mail and wire fraud with particularity, the plaintiffs must 'set forth

the time, place and contents of the false representation, the identity of the party making the false

statements and the consequences thereof.'" *Id.* (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d

1202, 1236 (10th Cir. 2000)).

Defendants assert that plaintiffs' Complaint fails to allege facts supporting a requisite

RICO predicate act—*i.e.*, mail fraud or wire fraud—because the alleged fraudulent statements

did not involve misrepresentations of fact.  Instead, defendants contend, the alleged

misrepresentations are defendants' statements to plaintiffs that they would work as independent

contractors, not employees.  Defendants assert that these alleged misrepresentations are

statements of law—not fact—and thus not actionable to support a RICO predicate act.

For support, defendants cite cases outside the Tenth Circuit that have rejected

misrepresentation claims arising from a defendant's classification of the plaintiff as an

independent contractor.  *See*, *e.g.*, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620–21 (9th

Cir. 2004) (affirming Rule 12(b)(6) dismissal of plaintiff's RICO claim based on defendant's alleged failure to pay plaintiff overtime because defendant's alleged misrepresentations—*i.e.*, that plaintiff was not entitled to overtime—were misrepresentations of the law and not actionable fraud necessary to support the predicate acts of mail and wire fraud); *Bernal v. FedEx Ground Package Sys., Inc.*, No. 15-01448, 2015 WL 4273034, at *3 (C.D. Cal. July 14, 2015) (holding that plaintiffs' fraud claims failed to state a claim under Rule 12(b)(6) because the alleged misrepresentations—*i.e.*, that plaintiffs were independent contractors employed by FedEx—were misrepresentations of the law and not ones of fact); *Debnam v. FedEx Home Delivery*, No. 10-11025, 2011 WL 1188437, at *2 (D. Mass. Mar. 31, 2011) (dismissing plaintiff's misrepresentation and fraud claims because the "sole" misrepresentation allegation was that defendant mischaracterized plaintiff "as an independent contractor, rather than as an employee" and that "characterization of the relationship is not a statement of 'fact' but rather an assertion of a legal conclusion" that could not support plaintiff's claims as a matter of law).

Also, defendants explain, "the Tenth Circuit looks to state common law" "[t]o determine what constitutes [mail and wire] fraud under Sections 1341 and 1343." *Shepard v. DineEquity, Inc.*, No. 08-2416-KHV, 2009 WL 8518288, at *6 (D. Kan. Sept. 25, 2009) (citing *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (applying Missouri fraud elements to determine whether defendants violated Sections 1341 and 1343)). And, defendants say, common law fraud in Kansas requires "false representations made as statements of existing and material *fact*." *Id.* (citing *Kelly v. VinZant*, 197 P.3d 803, 808 (Kan. 2008)) (emphasis added).

Plaintiffs respond that defendants' reliance on these cases is misplaced. Plaintiffs assert that these cases considered the elements of common law fraud under state law—not mail or wire

8

fraud prohibited by federal statute.  And, plaintiffs contend, the Supreme Court since has held

that the elements of common law fraud do not apply to a mail fraud claim.

In *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), the Supreme Court

held that a plaintiff asserting a RICO claim predicated on mail fraud need not show that it relied

on defendant's alleged misrepresentations.  *Id.* at 641–42.  In reaching this conclusion, the Court

recognized that the federal mail fraud statute included no reliance requirement.  *Id.* at 647–50.

The Court also acknowledged that "a person can be injured 'by reason of' a pattern of mail fraud

even if he has not relied on any misrepresentations."  *Id.* at 649.  In rejecting the argument that

the common law meaning of fraud should apply to federal mail fraud claims, the Supreme Court

explained that "the indictable act under § 1341 is not the fraudulent misrepresentation, but rather

the use of the mails with the purpose of executing or attempting to execute a scheme to defraud."

*Id.* at 652.

To the extent plaintiffs take *Bridge*'s broad statement to mean they need not plead a

fraudulent misrepresentation of fact to support the requirement of a predicate act of mail or wire

fraud, the court rejects that argument.  *Bridge* merely held that a plaintiff need not show reliance;

it never held that a federal mail fraud claim does not require the other elements of a common law

fraud claim—such as the existence of a material misrepresentation of fact.  *See Cal. Pharm.*

*Mgmt., LLC v. Redwood & Cas. Ins. Co.*, No. SACV 09-141 DOC, 2009 WL 10669956, at *8

(C.D. Cal. July 29, 2009) ("While *Bridge* holds that first-party reliance need not be shown, it

does not even speak of an 'intent to deceive' or categorically state that common law elements of

fraud have no place in a RICO claim predicated on mail or wire fraud.").  The court declines to

adopt plaintiff's interpretation of *Bridge*.

9

Indeed, *Bridge* suggests just the opposite; that is, the common law fraud element requiring a false representation of existing and material fact is a required element in a federal mail fraud claim. *Bridge* approvingly cited an earlier Supreme Court decision, recognizing that *Neder v. United States*, 527 U.S. 1 (1999), had concluded that "[t]he common-law requiremen[t] of 'justifiable reliance' . . . plainly ha[s] no place in the [mail, wire, or bank] fraud statutes.'" *Bridge*, 553 U.S. at 648–49 (quoting *Neder*, 527 U.S. at 24–25). And *Neder* also recognized that misrepresentation of a material fact is one element of federal mail fraud. 527 U.S. 24–25.

In sum, none of plaintiffs' arguments support the conclusion that federal mail fraud does not require the common law fraud element of a material misrepresentation of fact. And, importantly, to the extent plaintiffs argue to the contrary, the court is not convinced that *Bridge* somehow diminishes the persuasive value of the Ninth Circuit's decision in *Miller v. Yokohama Tire Corp.* Like the *Miller* plaintiff, plaintiffs here predicate their RICO claims on purported acts of mail and wire fraud involving their employers' alleged misrepresentations about their employment classification. 358 F.3d at 618–19. *See also* Doc. 23 ¶¶ 57–78, 117–40. As the Ninth Circuit held in *Miller*, such alleged misrepresentations are not misrepresentations of *fact*. *Miller*, 358 F.3d at 621–22. Instead, they are misrepresentations of law that are not actionable in fraud. *Id.* Following *Miller*'s reasoning,[4] the court concludes that plaintiffs' Complaint fails to allege plausible mail or wire fraud capable of supporting their RICO claim. This conclusion is consistent with other federal court opinions holding that misrepresentations of the law cannot support the predicate act of mail or wire fraud. *See, e.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) (affirming Rule 12(b)(6) dismissal of RICO claims premised on prelitigation demand letters and phone conversations where defendant allegedly made false representations of

---

[4]    The court has not located any Tenth Circuit decisions addressing this issue, but the court predicts that, if presented with this issue, the Tenth Circuit would find *Miller*'s reasoning persuasive and apply it to the facts alleged here.

law because such statements "are not actionable as fraud, including under the mail and wire fraud statutes"); *Apache Tribe of Okla. v. Brown*, 966 F. Supp. 2d 1188, 1195 (W.D. Okla. 2013) (dismissing RICO claim under Rule 12(b)(6) because the alleged misrepresentations were legal opinions and not "false statements of material fact" sufficient to plead the predicate acts of mail or wire fraud); *Va. Sur. Co., Inc. v. Macedo*, No. 08-5586 (JAG), 2009 WL 3230909, at *8 (D.N.J. Sept. 30, 2009) (dismissing RICO claim under Rule 12(b)(6) because "Plaintiff's allegations that . . . Defendants committed wire and mail fraud by virtue of falsely claiming that Defendant Jose Moreira was an employee of the Macedos Construction Co., Inc. in order [to] obtain Workers' Compensation benefits is not actionable as mail and wire fraud").

To save their RICO claim from dismissal on this ground, plaintiffs argue that their Complaint alleges a scheme to defraud based on representations made by the Agent Contract that present, at minimum, a mixed question of law and fact and thus are actionable in fraud. Doc. 41 at 26. Citing Kansas case law, plaintiffs assert that the question whether an individual is an employee or independent contractor is a question of fact. *Falls v. Scott*, 815 P.2d 1104, 1112 (Kan. 1991) ("[G]enerally speaking, the question of whether an individual is an employee or an independent contractor is considered a question of fact for the jury or trier of facts."); *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 80–92 (Kan. 2014) (applying a multi-factor test to determine whether FedEx employees were employees or independent contractors for purposes of the Kansas Wage Payment Act).

These Kansas cases recognize that disputed issues of fact over the working conditions of an individual's employment present a factual issue about the individual's employment status. And, in Kansas, the trier of fact must decide those facts and then apply the law to those facts to determine the proper employment classification. But the ultimate conclusion—that the

individual is an employee, or that the individual is an independent contractor—is a legal one. *See Falls*, 815 P.2d at 1112 ("Where the facts are undisputed or the evidence is susceptible of only a single conclusion, it is a question of law for the court whether one is an employee or an independent contractor.").

Here, the parties dispute the underlying factual issues—whether defendants properly classified plaintiffs as independent contractors. But, in the context of alleging mail or wire fraud, the court merely considers the alleged misrepresentations that defendant made—*i.e.*, that plaintiffs were independent contractors. That conclusion is a legal representation. It is not a misrepresentation of *fact*. Also, the Complaint never alleges that defendants made misrepresentations about any of the underlying factual issues used to determine employment status. Instead, the Complaint simply alleges that defendants made a legal representation to plaintiffs by classifying them as independent contractors and not employees. Such a statement cannot support an actionable fraud claim under the mail and wire fraud statutes.

For all these reasons, plaintiffs' Complaint fails to allege an actionable predicate act of mail or wire fraud capable of supporting a plausible RICO claim. The court thus dismisses plaintiffs' RICO claim for this reason.

### 2. Plaintiffs' Complaint fails to allege a RICO enterprise.

Next, defendants assert that plaintiffs' RICO claim fails for a second, independent reason. Defendants argue that that the Complaint fails to state a plausible RICO claim because it alleges no facts sufficient to support a finding or inference of a RICO "enterprise" distinct from the alleged culpable persons.

RICO prohibits a "person" who is associated with an "enterprise" to conduct its affairs through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). "RICO broadly defines

'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (quoting 18 U.S.C. § 1961(4)). Here, plaintiffs allege that the RICO enterprise is an "association-in-fact enterprise," consisting of "Defendants FBL Financial; FBP&C; FB Life; and WAIC, plus the 'FBFS' fake entity, the Farm Bureau Advisory Committee, the Agency Managers, the Market Managers, the District Sales Managers and other affiliates that Defendants use to recruit other Farm Bureau Insurance Agents by paying them 'overwrites' for the sales made by the Insurance Agents they solicit and bring on board to Farm Bureau (collectively, the 'Farm Bureau Enterprise' or 'FBE')." Doc. 23 ¶ 105.

The Supreme Court has explained that "'an enterprise includes any union or group of individuals associated in fact[,]" and that "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 944 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981)). An associated-in-fact enterprise requires "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

To state a plausible RICO claim, the "person" and the "enterprise" engaged in racketeering activities must be distinct entities. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001); *George*, 833 F.3d at 1249; *Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1146 (10th Cir. 1998). Also, "it's true that a defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO

'enterprise.'"  *George*, 833 F.3d at 1249 (citing *Brannon*, 153 F.3d at 1149 (further citations omitted)).

Here, the Complaint alleges that the Farm Bureau enterprise "is separate and distinct from the persons that constitute the Enterprise."  *Id.* ¶ 108.  But, defendants assert, this conclusory allegation is not supported by any factual allegations capable of establishing or supporting an inference that the RICO enterprise was separate and distinct from the alleged culpable persons.  And thus, defendants contend, the Complaint's RICO claim cannot survive dismissal under the *Twombly* pleading standard.

Defendants assert that plaintiffs' Complaint alleges that the RICO "enterprise" consists of the defendant corporation, its subsidiaries, and agents who carry out the primary business of Farm Bureau by selling insurance products through the recruitment and use of insurance agents. *See* Doc. 23 ¶ 105 (alleging that the RICO enterprise is an "association-in-fact enterprise," consisting of "Defendants FBL Financial; FBP&C; FB Life; and WAIC, plus the 'FBFS' fake entity, the Farm Bureau Advisory Committee, the Agency Managers, the Market Managers, the District Sales Managers and other affiliates that Defendants use to recruit other Farm Bureau Insurance Agents.").  Defendants argue that these facts, even when viewed in plaintiffs' favor, cannot support a RICO claim because the Tenth Circuit and other courts have recognized that "a defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO 'enterprise.'"  *George*, 833 F.3d at 1249 (citations omitted); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226–28 (7th Cir. 1997) (holding that a "manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning the [RICO] statute."); *Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 886 (10th Cir. 1992) (setting aside

14

a verdict against defendants on a RICO claim because the evidence "showed nothing more than the various officers and employees of [a corporation] carrying on the firm's business," and "a separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business."); *List Interactive, Ltd. v. Knights of Columbus*, No. 17-cv-00210-RBJ, 2017 WL 3217817, at *14–15 (D. Colo. July 28, 2017) (concluding that plaintiffs' Complaint failed to plead sufficiently a distinct RICO "person" and "enterprise" because "plaintiffs make no allegations that the [defendant] Knights of Columbus carried out its scheme by working with any separate business or entity other than itself, its 'lodges,' or its agents"); *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-2662-JAR, 2009 WL 10689044, at *10 (D. Kan. Nov. 19, 2009) (dismissing plaintiff's RICO claim under Rule 12(b)(6) because "[t]he 'person' named as a defendant is the same corporate entity which plaintiff identifies as the 'enterprise'" and "[t]his is a defect in pleading a RICO claim.").

The court agrees with defendants. The facts alleged here are similar to those alleged in *Fitzgerald v. Chrysler Corporation*. The *Fitzgerald* plaintiffs alleged that the Chrysler Corporation was a RICO "person" conducting the affairs of an "enterprise" through the "Chrysler family" consisting of Chrysler's subsidiaries, Chrysler's independent automobile dealers, and various trusts that Chrysler controlled. 116 F.3d at 226. Writing for the Seventh Circuit, Judge Richard A. Posner refused to apply "RICO to a free-standing corporation such as Chrysler merely because Chrysler does business through agents, as virtually every manufacturer does." *Id.* at 227. Instead, the Seventh Circuit held, "where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its

15

dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the [RICO] statute." *Id.* at 228. The Seventh Circuit thus affirmed the district court's dismissal of plaintiffs' RICO claim under Rule 12(b)(6) for failing to state a claim. *Id.*

The same analysis applies here. Plaintiffs' Complaint identifies the defendant "Farm Bureau entities" and describes each one's role in the Farm Bureau business or brand. Doc. 23 ¶¶ 17–27. The Complaint also alleges that "separate and apart from Farm Bureau" are Agency Managers who Farm Bureau "exploits" to solicit and manage insurance agents within the "Farm Bureau enterprise." *See id.* ¶¶ 83, 86; *see also id.* ¶¶ 83–92. The Complaint describes how defendants require their insurance agents to sign an Agent Contract classifying them as independent contractors. *Id.* ¶¶ 83–92. And the Complaint asserts that Farm Bureau uses an Advisory Committee to maintain order over its' insurance agents. *Id.* ¶ 80. But each of these allegations merely describes how Farm Bureau used its companies, subsidiaries, affiliates, and agents to carry out its business. And, as other courts have held, a plaintiff cannot state a plausible RICO enterprise with allegations that a corporation acted only through its own subsidiaries and agents. *See*, *e.g.*, *List Interactive*, 2017 WL 3217817, at *14–15 (holding that no RICO enterprise was alleged when "plaintiffs make no allegations that the [defendant] Knights of Columbus carried out its scheme by working with any separate business or entity other than itself, its 'lodges,' or its agents").

Plaintiffs do their best to minimize their pleading's shortcomings, arguing that the Complaint alleges that each of the entities are separate and distinct from one another. That allegation, plaintiffs say, is sufficient to satisfy the distinctiveness requirement.

*First*, plaintiffs argue that defendants are legally incorporated as separate entities. But merely suing separate legal entities is not sufficient to plead a distinct RICO enterprise. To hold otherwise would contradict the rule that a "defendant corporation, acting through its subsidiaries, agents, or employees typically can't be both the RICO 'person' and the RICO 'enterprise,'" *George*, 833 F.3d at 1249, because a corporation and its subsidiaries, agents, and employees are typically separate legal entities.

Nevertheless, plaintiffs support this argument by citing the Supreme Court's decision in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001). In that case, the Supreme Court held that an individual and his wholly owned corporation were sufficiently distinct for RICO purposes. 533 U.S. at 166. The Court found that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Id.* at 163. And "nothing in the [RICO] statute . . . requires more 'separateness' than that." *Id.* The Court also observed, "[a]fter all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Id.*

The *List Interactive* plaintiffs made a similar argument about *Cedric Kushner*. 2017 WL 3217817, at *14–15. The Colorado district court rejected it, finding that plaintiffs had read *Cedric Kushner* "too broadly." *Id.* at *14. Instead, *Cedric Kushner* "merely ruled on the narrow issue of whether an individual as a RICO 'person' was sufficiently distinct from a corporate RICO 'enterprise' consisting merely of that individual's wholly-owned company." *Id.* (citing *Cedric Kushner*, 533 U.S. at 160). And the Supreme Court specifically acknowledged that it was not ruling "whether a corporation as a RICO 'person' is sufficiently distinct from a RICO

17

'enterprise' comprised of 'the corporation, together with all its employees and agents[.]'" *Id.* (quoting *Cedric Kushner*, 533 U.S. 164). The Colorado district court also noted: "If anything, the Court in dicta raised doubts about whether the distinction requirement would be met under these circumstances." *Id.* (citing *Cedric Kushner*, 533 U.S. 164). "For instance, the Court noted that while it made sense that RICO covered an individual conducting the affairs of an enterprise comprised of just his wholly-owned company because of the way the statute is phrased, it commented that it was 'less natural to speak of a corporation as "employed by" or "associated with" . . . [the] oddly constructed entity' comprised of 'the corporation, together with all its employees and agents'—*i.e.*, plaintiffs' alleged RICO 'enterprise' in this case." *Id.* (citing *Cedric Kushner*, 533 U.S. 164). The Colorado court's reasoning is highly persuasive. And, for the same reasons, the court refuses to find here that plaintiffs have alleged distinctiveness merely by alleging that the entities are incorporated as separate legal entities.

*Second*, plaintiffs argue that the Complaint alleges that defendant FBL Financial has no ownership interest in defendant FBP&C. Doc. 23 ¶¶ 30 –33. Instead, FBL Financial manages FBP&C through a Management Services Agreement that purportedly creates a "barrier of separation" by maintaining "separate identities" between the companies.[5] Doc. 41 at 35. These allegations are inconsequential. Similar to the facts here, in *Fitzgerald*, Chrysler Corporation did not own the franchised automobile dealers who sold allegedly fraudulent Chrysler warranties to the public. 116 F.3d at 227. Instead, the "dealers were merely a conduit" who "did not, by their incidental role in the alleged fraud . . . lend an air of legitimacy to a person or entity that unless

---

[5]    Plaintiffs support these assertions by citing FBL Financial's 10-K for 2016. Doc. 35 at 24 nn.115–16. Defendants cite the same material in their Reply. Doc. 54 at 35. The court can take judicial notice of this filing and consider it on a motion to dismiss. *See In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1199, 1200 (10th Cir. 2015) (affirming Rule 12(b)(6) dismissal of securities fraud claims where the district court took judicial notice of several publicly available documents, including SEC forms); *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (holding, on a motion to dismiss, that the court could "take judicial notice of properly-authenticated public disclosure documents filed with the SEC").

masked by a legitimate-seeming enterprise would be quickly discovered to be engaged in criminal acts." *Id.* at 227–28; *see also List Interactive*, 2017 WL 3217817, at *14–15 (holding that "plaintiffs' allegations that these constituent parts of the [Knights of Columbus] fraternity— including thousands of local councils, assemblies, field agents, and general agents—merely carry out the Knights of Columbus' business of selling insurance (albeit, an allegedly fraudulent product)" did not suffice to allege "that any other component of the alleged 'enterprise' played any role other than an incidental one in perpetuating these alleged crimes."). Likewise, plaintiffs' Complaint here alleges that the Farm Bureau family of companies are affiliated and that they managed other entities and agents in the course of carrying out Farm Bureau's business. Even if defendants' purported conduct was fraudulent, plaintiffs fail to state a RICO claim because the Complaint contains no allegations that Farm Bureau carried out its fraudulent scheme by working with a business or entity separate from Farm Bureau itself, its affiliates, or its agents.

Plaintiffs also urge the court to disregard *Fitzgerald* because, it contends, the Tenth Circuit declined to follow it in *George*. The court doesn't read *George* that way. Instead, *George* approvingly cited the Seventh's Circuit's holding in *Fitzgerald*—*i.e.*, that "a 'manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute' a RICO enterprise." *George*, 833 F.3d at 1249 (quoting *Fitzgerald*, 116 F.3d at 226–228). But the Tenth Circuit explained that *Fitzgerald* differed from the facts alleged in *George*. *Id.* at 1250. Unlike the *Fitzgerald* Complaint that did not allege sufficiently a RICO enterprise consisting of a manufacturer, its dealers, and other agents, the *George* Complaint asserted that "[Bank of America, N.A. ("BOA")] and Urban—two separate legal entities—joined together, along with several other entities, to form and conduct the affairs of the

BOA-Urban association-in-fact enterprise." *Id.* The two entities in *George* were separate and unaffiliated entities who operated different businesses. But, the *George* plaintiffs alleged, the two entities united for the common purpose of "implement[ing] and execut[ing] a scheme to fraudulently deny [Home Affordable Modification Program] loan modifications to qualified borrowers." *Id.* And, the *George* plaintiffs also alleged, "BOA conducted *the enterprise's* affairs, rather than BOA's own affairs, by acting in concert with Urban and other members of the enterprise" to implement and execute the fraudulent scheme. *Id.* (emphasis added).

Here, even when construed in plaintiffs' favor, the Complaint contains no similar allegations. Instead, plaintiffs' Complaint alleges an enterprise consisting of affiliated entities—either through parent/subsidiary or agency relationships. And, the Complaint's allegations describe how these various affiliated entities carried out Farm Bureau's business of recruiting and hiring insurance agents to sell insurance to consumers. But the Complaint never alleges that the entities were conducting the affairs of a separate "enterprise" sufficient to state a RICO claim.

*Finally*, plaintiffs ask the court to apply a fraud exception to the distinctiveness requirement because, plaintiffs contend, Farm Bureau has established an "opaque corporate structure" as a means to perpetuate its fraudulent scheme. Doc. 41 at 38. It is true that at least one Circuit has recognized a fraud exception. In *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 493 (6th Cir. 2013), the Sixth Circuit held:

> [T]he distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme. It would be strange indeed to absolve a parent corporation of liability for doing precisely what RICO was designed to prevent: the use of an association of legally distinct entities "as a vehicle through which unlawful . . . activity is committed."

*Id.* at 493 (quoting *Cedric Kushner*, 533 U.S. at 164 (further citations omitted)).  Although the Tenth Circuit has not adopted a fraud exception explicitly, it has cited *ClassicStar* approvingly, explaining that the Sixth Circuit's decision recognized "that 'corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity.'" *George*, 833 F.3d at 1250 (quoting *ClassicStar*, 727 F.3d at 492).  In *George*, the Tenth Circuit held that plaintiffs sufficiently had stated facts supporting a distinct RICO enterprise because the Complaint alleged that "BOA enlisted Urban—a third-party vendor—to (1) serve as a 'black-hole' for the documents that borrowers sent in the course of trying to obtain permanent loan modifications; (2) create internal databases for scattering documents so it would appear that borrowers failed to provide requested documents; and (3) make it easier to conceal the enterprise's activities."  *Id.* (citations, internal quotation marks, and alternations omitted).

But plaintiffs' Complaint here is different.  It lacks sufficient factual allegations for the fraud exception to apply—even if the Tenth Circuit recognizes that theory.  The Complaint never alleges facts capable of supporting a finding or inference that the affiliated entities or agents actively participated in the fraud as part of an effort to conceal or perpetuate the fraudulent scheme—as the plaintiffs alleged in *George* and *ClassicStar*.  Instead, the allegations here involve only incidental acts by the affiliated entities or agency managers as they carried out Farm Bureau's business.  *See* Doc. 23 ¶¶ 17–24, 32–38, 44, 57, 60, 64(d), 79, 83–92, 105, 107, 111, 121–22, 126.  The court thus cannot apply the fraud exception here to excuse the distinctiveness requirement for pleading a plausible RICO enterprise.

For all these reasons, the court concludes that plaintiffs' Complaint fails to allege a RICO "enterprise" distinct from the defendant "person." Thus, plaintiffs' RICO claim fails as a matter of law.

### 3. Plaintiffs have not alleged sufficiently that the enterprise's members associated together for a common fraudulent purpose.

Finally, defendants provide a third and independent reason to dismiss plaintiffs' RICO claim for failing to state a claim: The Complaint fails to allege facts capable of supporting a finding or inference that the enterprise's members associated together for a common fraudulent purpose.[6]

As already stated, the Supreme Court has defined an associated-in-fact enterprise as "'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle*, 556 U.S. at 944 (quoting *Turkette*, 452 U.S. at 583); *see also United States v. Hutchinson*, 573 F.3d 1011, 1022 (10th Cir. 2009) (affirming RICO jury instructions that "obliged the government to show that the members of the alleged enterprise shared a common purpose, that they interacted or associated in some way to advance this shared purpose, and that the members of the enterprise so functioned long enough to complete a pattern of racketeering activity. After *Boyle*, no more is required to show that an enterprise has the requisite structure."). An "association" requires "both interpersonal relationships and a common interest." *Boyle*, 556 U.S. at 944 (citations omitted); *see also Hutchinson*, 573 F.3d at 1021–22 (10th Cir. 2009) (explaining that a RICO enterprise requires that "not only must members of the group only share a common

---

[6]    Plaintiffs' Opposition asserts that this argument conflicts with the argument discussed above, in Part III.A.2. The court disagrees. The argument discussed in the preceding section explains that plaintiffs' RICO claim fails because it does not allege an enterprise distinct from the allegedly culpable persons. The argument discussed in this section explains that plaintiffs' RICO claim fails to state a claim because the Complaint never alleges that the enterprise's members joined together for a common purpose of engaging in a course of conduct. These two arguments are consistent and provide two reasons why plaintiffs' RICO claim cannot survive Rule 12(b)(6) dismissal.

purpose, there also must be evidence of 'interpersonal relationships' aimed at effecting that purpose—evidence that the members of the group have 'joined together' to advance 'a certain object' or 'engag[e] in a course of conduct.'" (quoting *Boyle*, 556 U.S. at 946)).

Defendants argue that plaintiffs' allegations describe a "rimless hub-and-spoke" organization that cannot qualify as an association-in-fact enterprise.  The Tenth Circuit has not addressed similar "hub-and-spoke" allegations since the Supreme Court decided *Boyle*.  But the Third Circuit and other district courts have held that facts alleging a rimless hub-and-spokes organization fail to state a plausible association-in-fact enterprise.  *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (affirming district court's Rule 12(b)(6) dismissal of certain alleged RICO enterprises that asserted hub-and-spoke structures but lacked a unifying rim because such allegations did "not plausibly imply anything more than parallel conduct by the [spokes], [and] they [could] support the inference that the [spokes] 'associated together for a common purpose of engaging in a course of conduct'" (quoting *Boyle*, 556 U.S. at 946)); *Negron v. Cigna Health & Life Ins.*, __ F. Supp. 3d __, 2018 WL 1258837, at *14–15 (D. Conn. Mar. 12, 2018) (dismissing RICO claim for failing to allege a "viable association-in fact" because "plaintiffs [did] not allege that any of the [spokes] had relationships, agreements, or collaborative communications amongst each other" and such "parallel conduct by separate actors is insufficient to establish an association-in-fact RICO enterprise"); *Target Corp. v. LCH Pavement Consultants, LLC*, No. 12-1912 (JNE/JJK), 2013 WL 2470148, at *4–5 (D. Minn. June 7, 2013) (dismissing RICO claim under Rule 12(b)(6) because the Complaint "alleg[ed] an association-in-fact enterprise comprised of all Defendants" or a "hub-and-spokes organization" but "failed to allege relationships among the Defendant paving contractors [*i.e.*, the spokes]" and so "the RICO enterprise element [was] not plausibly alleged"); *Peters v. Aetna, Inc.*, No. 1:15-

23

cv-00109-MR, 2016 WL 4547151, at *8–9 (W.D.N.C. Aug. 31, 2016) (concluding that plaintiff failed to allege a plausible RICO enterprise because "[a]t best, the Plaintiff's allegations establish that the subcontractors 'enter[ed] into separate agreements with a common defendant,' but that they had 'no connection with one another, other than the common defendant's involvement in each transaction'" (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 327)).  The court finds the reasoning in these cases persuasive, and it predicts that the Tenth Circuit, if presented with the issue, would apply it to the facts alleged here.

Defendants argue that plaintiffs' alleged enterprise fails to allege the necessary association to state a plausible RICO claim—just how the plaintiffs' allegations fell short in the above-cited cases.  Defendants argue the Complaint describes the "hub" as the four Farm Bureau defendants (FBL Financial, FBP&C, FB Life, and WAIC).  And, defendants assert, the Complaint describes the "spokes" as the "FBFS" fake entity, the Farm Bureau Advisory Committee, the Agency Managers, the Market Managers, the District Sales Managers, and other affiliates used to perpetuate the scheme.  Defendants also argue that plaintiffs' RICO claim fails because the Complaint alleges no facts capable of supporting a finding or inference that the "spokes" associated together for the common purpose of engaging in a course of conduct.

Plaintiffs respond that the Complaint alleges that the Farm Bureau Advisory Committee binds the Farm Bureau entities together and controls the various agency managers.[7]  Doc. 41 at 40 (citing Doc. 23 ¶¶ 80, 109).  Even so, these allegations—viewed in plaintiffs' favor—never allege any *relationships* among the members of the alleged enterprise.  The allegations also don't

---

[7]    The parties have submitted several, competing demonstrative graphs, asserting that each one accurately represents the structure of the RICO enterprise as the Complaint alleges it.  *See* Doc. 23 ¶ 27; Doc. 41 at 41; Doc. 54 at 41.  The court does not rely on any these graphs to reach its conclusion here.  Instead, the court reads the allegations in the Complaint, construing them in plaintiffs' favor, and determines that the allegations fail to allege that the enterprise's members associated together for a common purpose.

assert that the members *interacted* or *associated* together to advance a common purpose, as *Boyle* requires. This shortcoming applies with particular force to the agency managers. Plaintiffs' Complaint describes these managers simply as members of the enterprise, but the Complaint contains no allegations describing how they interacted with other members of the enterprise to advance a certain objective. *See* Doc. 23 ¶¶ 83–85, 88–90 (describing the managers as "independent" from but "aligned with" Farm Bureau but containing no allegations about how these entities associated or interacted together for a common purpose). Without such allegations, plaintiffs' Complaint fails to allege a RICO enterprise. So, for this reason too, plaintiffs' RICO claim fails as a matter of law.

### B. Are Plaintiff Tronsgard's Claims Time Barred?

Defendants next assert that each of plaintiff Tronsgard's claims are time-barred. Defendants contend that Mr. Tronsgard's claims accrued when he signed his Agent Contract in 2003—more than 14 years before filing this lawsuit. And defendants argue, the statute of limitations expired for each of Mr. Tronsgard's claims before he filed suit. Thus, defendants assert, the court should dismiss Mr. Tronsgard's claims as a matter of law because they are time-barred.

In their Response, plaintiffs concede that the statute bars Mr. Tronsgard's KWPA (Count III), quantum meruit (Count IV), and unjust enrichment (Count V) claims. The court thus dismisses these claims from the lawsuit. However, plaintiffs contend that Mr. Tronsgard's RICO (Count I) and ERISA (Count III) claims are timely. But the court already has concluded that plaintiffs' Complaint fails to state a plausible RICO claim. So, the court need not consider whether the statute of limitations bars plaintiff Tronsgard's RICO claim. The court thus addresses only the timeliness of Mr. Tronsgard's ERISA claim, below.

In its analysis, the court recognizes that "[s]tatute of limitations questions may . . . be appropriately resolved on a Fed. R. Civ. P. 12(b) motion" even though "the statute of limitations is an affirmative defense." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). A Rule 12(b)(6) dismissal is warranted "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Id.*

### 1. Plaintiff Tronsgard's ERISA Claim

ERISA does not contain a statute of limitations. *Muller v. Am. Mgmt. Ass'n Int'l*, 368 F. Supp. 2d 1166, 1172 (D. Kan. 2004). So, "courts look to the statute of limitations for (a) the most analogous state law claim (b) in the state with the most significant relationship to the matter in dispute." *Id.* (citing *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1200–03 (10th Cir. 1990)). Here, defendants contend, and plaintiffs do not dispute, that plaintiffs' ERISA claims are governed by a five-year statute of limitations. Doc. 32 at 18; Doc. 41 at 45 n.157. The court agrees. *Muller*, 368 F. Supp. 2d at 1172 (citing *Caldwell v. Life Ins. Co. of N. Am.*, 959 F. Supp. 1361, 1367 (D. Kan. 1997) ("K.S.A. § 60-511 is the appropriate statute of limitations for ERISA claims brought pursuant to 29 U.S.C. § 1132.") (further citation omitted)).

Defendants assert that Mr. Tronsgard's ERISA claim accrued when he "'first learn[ed] that [he] is considered an independent contractor and is therefore not entitled to benefits, regardless of whether [he] later files a formal claim for benefits.'" *Id.* at 1172–73 (quoting *Brennan v. Metro. Life Ins. Co.*, 275 F. Supp. 2d 406, 410 (S.D.N.Y. 2003)). Defendants argue that Mr. Tronsgard first learned about his independent contractor classification when he signed his Agent Contract in 2003—a contract that specifically classified him as an independent contractor and not an employee. Defendants thus contend that Mr. Tronsgard's ERISA claim is

time-barred because he did not file this lawsuit until 2017—more than five years after his claim accrued.

Plaintiffs disagree. They assert that the federal discovery rule governs when their ERISA claims accrue. Under that rule, "'[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Constructors Corp.*, 15 F.3d at 969. So, plaintiffs assert, Mr. Tronsgard's ERISA claim accrued not when he signed the Agent Contract classifying him as an independent contractor but, instead, when he discovered that the Contract misclassified him as an independent contractor and not as an employee.

Plaintiffs argue that the date when Mr. Tronsgard discovered his ERISA injury is a fact-intensive question that requires a more robust factual record. Also, plaintiffs contend that the accrual date is a question the court cannot resolve on a motion to dismiss. The court agrees with them. Plaintiffs' Complaint does not make it clear when Mr. Tronsgard discovered defendants' purported ERISA violation. To be sure, Mr. Tronsgard knew that defendants had classified him as an independent contractor and not an employee when he signed his Agent Contract in 2003. But the independent contractor designation was not a *per se* ERISA violation. Instead, Mr. Tronsgard's ERISA claim arose when he discovered that defendants had *misclassified* him as an independent contractor. Viewing the Complaint in the light most favorable to plaintiffs, the court cannot conclude, as a matter of law, that Mr. Tronsgard discovered or should have discovered the misclassification before the statute of limitations expired. Thus, on this record,

the court denies defendants' motion to dismiss Mr. Tronsgard's ERISA claim as untimely. *See Cosgrove v. Kan. Dep't of Soc. & Rehabilitation Servs.*, 332 F. App'x 463, 465 (10th Cir. 2009) (holding that "[b]ecause the complaint does not contain the date upon which [plaintiff] discovered" his injuries, "this is not a situation where 'the dates given in the complaint make clear that the right sued upon has been extinguished.'" (quoting *Aldrich*, 627 F.2d at 1041 n.4)); *see also Bank of Am., N.A. v. Dakota Homestead Title Ins. Co.*, 553 F. App'x 764, 768 (10th Cir. 2013) (reversing a district court's dismissal of a claim on statute of limitations grounds because "it is not clear from the face of the complaint that the claim . . . is time-barred.").

Defendants' Reply contends that the "Tenth Circuit has had little trouble concluding a Rule 12(b)(6) dismissal is appropriate" when a plaintiff's Complaint identifies the operative dates of a purported ERISA violation. Doc. 54 at 21. The court disagrees with this statement for two reasons. First, plaintiffs' Complaint does not identify—clearly—when Mr. Tronsgard's ERISA claim accrued. And second, defendants cite Tenth Circuit cases where the Complaint identified the specific date when an employer denied ERISA benefits that plaintiffs believed they were entitled to receive. *See Lee v. Rocky Mountain UFCW Unions & Emp'rs Tr. Pension Plan*, 13 F.3d 405, 1993 WL 482951, at *1 (10th Cir. Nov. 23, 1993) (unpublished table opinion) (affirming Rule 12(b)(6) dismissal of ERISA claim because "the critical dates appeared plainly on the face of [plaintiff's] Complaint[,]" *i.e.* plaintiff alleged that defendant denied plaintiff's benefits application on January 6, 1986, but plaintiff did not file suit for "more than six years after her cause of action . . . had accrued" which was beyond the limitations period); *see also Mid-South Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016) (holding that plaintiffs' ERISA claim accrued when defendants stopped paying monthly employer contributions to employee benefit plans). Importantly, these cases involved no

allegations of employee misclassification like the ones alleged here.  The court thus finds these cases unpersuasive.

Instead, the court finds persuasive two decisions from other federal district courts that have denied Rule 12(b)(6) motions to dismiss ERISA claims in misclassification cases because the plaintiffs' Complaint presented a factual question about when plaintiffs discovered or should have discovered the alleged ERISA violation.  *See*, *e.g.*, *Ferro v. Metro. Ctr. for Mental Health*, No. 13 Civ. 2347(PKC), 2014 WL 1265919, at *7 (S.D.N.Y. Mar. 27, 2014) (denying motion to dismiss plaintiffs' ERISA claims as untimely and rejecting defendants' argument that their claims "accrued at the time of their hire and alleged misclassification as independent contractors" because the Complaint "makes no mention of whether plaintiffs knew of their alleged eligibility for any employee benefit plan" and "absent additional information, the Court cannot determine when plaintiffs reasonably should have been aware of their claims and whether the claims are timely."); *Jammal v. Am. Family Ins.*, No. 1:13 CV 437, 2013 WL 4049673, at *7 (N.D. Ohio Aug. 9, 2013) (denying Rule 12(b)(6) motion to dismiss and rejecting defendants' argument that plaintiffs' ERISA claims accrued when they signed an agreement classifying them as independent contractors, not employees, because it was "unclear based on the facts and allegations set forth in the Complaint and attached documents in this case when" plaintiffs discovered or should have discovered the ERISA violation, and instead, "the question of claim accrual may be better after fact discovery is complete").  *See also Godshall v. Franklin Mint Co.*, 285 F. Supp. 2d 628, 635 (E.D. Pa. 2003) (denying defendants' motion for partial summary judgment against plaintiffs' ERISA claim on statute of limitations grounds and concluding that "[w]hile there is ample evidence that Plaintiffs knew they were being classified as independent contractors" when defendants hired them, no summary judgment facts "establish[ed] that

Plaintiffs possessed knowledge of all facts necessary to understand that some claim may exist under ERISA when they were hired . . . .").

For the same reasons, the court refuses to dismiss Mr. Tronsgard's ERISA claim based on the statute of limitations.

### C.  Have Plaintiffs Properly Pleaded Exhaustion of Administrative Remedies to State a Plausible ERISA Claim?

Defendants next assert that plaintiffs' ERISA claims fail as a matter of law because the Complaint never pleads that they exhausted their administrative remedies.  It is well established that a plaintiff must exhaust administrative remedies before bringing an ERISA benefits claim in court.  *See Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999); *see also Lewis v. U.F.C.W. Dist. Union Local Two & Emp'rs Pension Fund*, 273 F. App'x 765, 767 (10th Cir. 2008) (citing *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir. 1998)).  The Tenth Circuit has not decided whether the failure to exhaust administrative remedies is a jurisdictional bar to asserting an ERISA claim.  But this court previously considered the issue in *Richardson v. Kellogg Co.*, No. 14-2372-DDC-JPO, 2014 WL 7338844, at *3–7 (D. Kan. Dec. 22, 2014).  The court concluded that "if our Circuit were given the opportunity to consider directly whether an ERISA exhaustion argument is a jurisdictional requirement, it would conclude that it is not," and thus the court could not "dismiss plaintiff's ERISA claim on the pleadings" based on a failure to plead exhaustion.  *Id.* at *6.

The court reached this conclusion for several reasons.  First, several other circuit courts have held that ERISA's exhaustion requirement is not jurisdictional, but is an affirmative defense.  *Id.* at *4 (first citing *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 n.2 (9th Cir. 2008); then citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308–09 (5th Cir. 2008); then citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279–80 (3d Cir. 2007); then citing

*Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006)). And a plaintiff is not required to plead exhaustion when the failure to exhaust is an affirmative defense. *See Rozek v. N.Y. Blood Ctr.*, 925 F. Supp. 2d 315, 342 (E.D.N.Y. 2013); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that, because the failure to exhaust administrative remedies under the Prison Litigation Reform Act is an affirmative defense, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints"). Second, the court declined to construe the Tenth Circuit's unpublished opinion in *Karls v. Texaco, Inc.*, 139 F. App'x 29 (10th Cir. 2005), to provide a reason for dismissing an ERISA claim for failing to plead exhaustion. *Richardson*, 2014 WL 7338844, at *5. Instead, the court explained, *Karls* did not address squarely whether the failure to exhaust ERISA administrative remedies is a jurisdictional requirement that permits a court to dismiss ERISA claims on the pleadings if the plaintiff fails to plead exhaustion or, instead, it is an affirmative defense. *Id.* Also, *Karls* affirmed a Rule 12(b)(1) dismissal for lack of standing—not failure to state a claim under Rule 12(b)(6). *Id.* Finally, the court noted that the Tenth Circuit decided *Karls* before the Supreme Court held in *Jones v. Bock* that failing to exhaust administrative remedies under the Prison Litigation Reform Act is an affirmative defense that a plaintiff's complaint need not plead. *Id.* at *6 (citing *Jones*, 549 U.S. at 216). So, in light of that authority, the court concluded that the Tenth Circuit, if presented with the question, would conclude that ERISA's exhaustion requirement is not jurisdictional, but instead is an affirmative defense, and that a plaintiff need not plead exhaustion to survive a Rule 12(b)(6) motion to dismiss. *Id.* at *6.

Defendants' argument ignores this court's holding in *Kellogg*. Instead, defendants' Reply asserts that "Tenth Circuit law is well established that a court may dismiss an ERISA claim based on the pleadings alone if the plaintiff fails to allege exhaustion of administrative

remedies." Doc. 54 at 23.  The cited cases don't stand for this sweeping proposition.  In all but

one of the cited cases, the plaintiffs conceded that they had not exhausted administrative

remedies, and no exceptions to the exhaustion requirement applied.  *Unum Life Ins. Co. v.*

*Stearman*, No. CIV-16-1396-D, 2017 WL 1476162, at *2 (W.D. Okla. Apr. 24, 2017)

(dismissing ERISA claim without prejudice to refiling after administrative exhaustion after

parties confirmed that employee had not exhausted administrative remedies); *Stevens v. Hartford*

*Life & Accident Ins. Co.*, No. 12-2574-EFM-GLR, 2013 WL 1332803, at *3 (D. Kan. Apr. 2,

2013) (dismissing plaintiff's ERISA claim after her response to defendant's motion to dismiss

conceded that she had not exhausted her administrative remedies); *CH2M Hill, Inc. v. Alexander*,

No. CIV.A. 08-CV-00718MJ, 2009 WL 651805, at *4 (D. Colo. Mar. 12, 2009) (dismissing

ERISA claim under Rule 12(b)(6) because plaintiff conceded in his response that he had not

exhausted administrative remedies and made "just a bare assertion" of futility).  In the other case,

Judge Vratil denied a motion to dismiss a complaint that asserted some facts about plaintiff's

attempts to exhaust her claim but failed to plead proper exhaustion.  *McFarland v. UPS Ground*

*Freight, Inc.*, No. CIV.A. 12-2135-KHV, 2013 WL 535740, at *3 (D. Kan. Feb. 12, 2013).

Judge Vratil also granted plaintiff leave to amend her complaint to plead that exhaustion was

futile.  *Id.*

        Importantly, none of these cases held that a plaintiff is required to plead administrative

exhaustion to state a plausible ERISA claim.  Indeed, such a conclusion is contrary to this court's

previous holding in *Kellogg* and the holdings of many other federal district courts that have

addressed this issue.  *See*, *e.g.*, *Laitinen v. Sun Life Assurance Co.*, No. 2:15-cv-144, 2016 WL

890337, at *5 (W.D. Mich. Mar. 9, 2016) (denying Rule 12(b)(6) motion to dismiss ERISA

claim because "plaintiff's Complaint does not have to allege" administrative exhaustion); *Ferro*

*v. Metro. Ctr. for Mental Health*, No. 13 Civ. 2347(PKC), 2014 WL 1265919, at *7 (S.D.N.Y.

Mar. 27, 2014) ("[T]here is no requirement that a plaintiff plead exhaustion in a complaint under

ERISA."); *Rozek v. N.Y. Blood Ctr.*, 925 F. Supp. 2d 315, 342 (E.D.N.Y. 2013) ("[A] plaintiff is

not required to plead exhaustion of administrative remedies" to support an ERISA claim); *Gunn

v. Bluecross Blueshield of Tenn., Inc.*, No. 1:11-CV-183, 2012 WL 1711555, at *4 (E.D. Tenn.

May 15, 2012) (holding that the ERISA exhaustion requirement is an affirmative defense that the

court should consider on a summary judgment motion, not a Rule 12(b)(6) motion; *Zappley v.

The Stride Rite Corp.*, No. 2:09-CV-198, 2010 WL 234713, at *4 (W.D. Mich. Jan. 13, 2010)

(holding that "a Rule 12(b)(6) motion is generally not the proper vehicle for asserting lack of

[ERISA] exhaustion").

       Defendants provide no reason for the court to depart from its holding in *Kellogg*.  Indeed,

the Tenth Circuit has not addressed this precise issue since this court issued its *Kellogg* decision.

So, the court again concludes, if presented with this question, the Tenth Circuit would hold that

ERISA exhaustion is an affirmative defense and that a plaintiff's Complaint need not plead

exhaustion to survive a Rule 12(b)(6) motion to dismiss.

       Notwithstanding this determination, "[a] complaint 'is subject to dismissal under Rule

12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense

clearly must appear on the face of the pleading.'"  *Doe v. Bally*, No. 05-1346-WEB, 2007 WL

628273, at *2 (D. Kan. Mar. 1, 2007) (quoting 5A Charles A. Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 1357 (2d ed. 1990)).  Where the face of a plaintiff's complaint

contains no information about the failure to exhaust administrative remedies, the court cannot

grant a motion to dismiss for that reason.  *Id.* (citing *Turner & Boisseau, Inc. v. Nationwide Mut.

Ins. Co.*, 944 F. Supp. 842, 847 (D. Kan. 1996) and explaining that *Turner* denied a motion to

dismiss because the dates used to support the statute of limitations affirmative defense were not clear from the pleadings); *see also Zappley*, 2010 WL 234713, at \*4 (recognizing that "defendant may bring a Rule 12(b)(6) motion to assert an affirmative defense where the affirmative defense appears on the face of the plaintiff's complaint" but denying the motion to dismiss because "nothing [in plaintiff's Complaint] suggest[ed] that [plaintiff] failed to exhaust administrative remedies.").

Here, defendants assert that the face of plaintiffs' Complaint establishes that plaintiffs never satisfied the ERISA administrative exhaustion requirement.  Although the Complaint never states—explicitly—whether plaintiffs exhausted administrative remedies, it alleges that defendants have maintained for decades that insurance agents, like plaintiffs, are independent contractors.  Doc. 23 ¶ 72.  Plaintiffs allege that defendants have maintained this position in response to insurance agents' challenges to the designation and in earlier litigation.  *Id.* ¶¶ 72–73. Thus, plaintiffs allege:  "[T]o the extent any administrative remedies were available, it would have been futile for Plaintiffs and Class Members to pursue them."  *Id.* ¶ 74.

The Tenth Circuit generally excuses the ERISA exhaustion requirement "in two limited circumstances—when resort to administrative remedies would be futile or when the remedy provided is inadequate."  *Holmes v. Colo. Coalition for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1204 (10th Cir. 2014).  Defendants argue that plaintiffs' allegations here fail to plead sufficiently the futility exception to the ERISA exhaustion requirement.  But, as plaintiffs explain, defendants largely support their argument by citing cases deciding the futility question at summary judgment, not on a Rule 12(b)(6) motion to dismiss.  *See*, *e.g.*, *DeMoss v. Matrix Absence Mgmt., Inc.*, 438 F. App'x 650, 653 (10th Cir. 2011) (affirming summary judgment against plaintiff's ERISA claim because plaintiff never exhausted administrative remedies and

the evidence failed to show futility); *Getting v. Fortis Benefits Ins. Co.*, 5 F. App'x 833, 836 (10th Cir. 2001) (affirming summary judgment against plaintiff's ERISA claim because plaintiff "provides no evidence in support of" her futility argument and "did not make this argument to the district court"); *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1110 (D. Colo. 2016) (granting summary judgment against plaintiffs' ERISA claims in part because plaintiffs presented no evidence of futility for certain claims).

Plaintiffs assert that defendants' futility arguments are premature at the motion to dismiss stage. The court agrees. Viewing the Complaint's allegations in plaintiffs' favor, plaintiffs have alleged facts that are capable of supporting a finding or inference that it would have been futile for plaintiffs to exhaust their administrative remedies before filing their ERISA claims.

The Complaint alleges that defendants have asserted for decades that its insurance agents are independent contractors—both in response to insurance agents' challenges to this designation and in other litigation. Doc. 23 ¶¶ 72–73. The Complaint alleges that "as a result" of defendants' consistent and long-standing position, "it would have been futile for Plaintiffs and Class Members to pursue" any available administrative remedies. *Id.* ¶ 74. The court concludes that these allegations sufficiently plead futility to survive Rule 12(b)(6) dismissal. *See Muller v. Am. Mgmt. Ass'n Int'l*, 315 F. Supp. 2d 1136, 1140 (D. Kan. 2003) (denying a Rule 12(b)(6) motion to dismiss because "[i]n light of the liberal pleading standards under the federal rules . . . plaintiffs have sufficiently pled the exceptions to the administrative exhaustion requirement" and "[t]he court is therefore unwilling to dismiss plaintiffs' claim at this early stage."). *Cf. Jammal v. Am. Family Ins. Grp.*, No. 1:13 CV 437, 2015 WL 1810304, at *9 (N.D. Ohio Apr. 21, 2015) (concluding on summary judgment that "any attempt the Plaintiffs might have made to pursue ERISA benefits through the administrative process would have been futile" because "Defendants

35

contended then, and still contend that their agents are independent contractors with no standing to pursue benefits" by arguing "this position repeatedly to the IRS when challenged on the issue of tax treatments, and [litigating] the issue repeatedly in various courts").

The court thus denies defendants' motion to dismiss plaintiffs' ERISA claims.

### D.  Has Plaintiff Chavez Stated a Plausible Quantum Meruit/Rescission Claim?

Finally, defendants assert that Mr. Chavez's Count IV fails to allege a plausible claim for quantum meruit/rescission under Kansas law.  Mr. Chavez's quantum meruit/rescission claim alleges that, as a result of defendants' misclassification of his employment status, defendants received substantial benefits at his expense, including lost-profits, self-employment taxes, premiums for insurance to replace workers compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.  Doc. 23 ¶ 178.  Mr. Chavez asserts that he is entitled to compensation for the expenses that defendants illegally required him to incur, and he seeks quantum meruit value of his service as an employee.  *Id.* ¶ 179.

Defendants argue that the court should dismiss the quantum meruit/rescission claim for three reasons.  *First*, defendants assert, Mr. Chavez's quantum meruit claim duplicates his unjust enrichment claim.  The court recognizes that Kansas appears to use the terms quantum meruit and unjust enrichment "interchangeably."  *See Haile Group, LLC v. City of Lenexa*, 242 P.3d 1281, 2010 WL 4977221, at *9 (Kan. Ct. App. 2010) (unpublished table opinion) ("In Kansas, the terms "quasi-contract," "unjust enrichment," and "quantum meruit" appear to be used interchangeably and a claim based on any such theory is typically considered equitable in nature").  *See also Consolver v. Hotze*, 395 P.3d 405, 411 (Kan. 2017) ("Unjust enrichment/quantum meruit is an equitable doctrine." (citation and internal quotations omitted)).

But, as the court has observed, no Kansas Supreme Court authority or other persuasive Kansas state authority "expressly hold[s] that Kansas does not recognize the two doctrines as separate causes of action." *Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1174 (D. Kan. 2017). So, the court has declined to assume that Kansas considers the two claims to assert the same cause of action. *Id.* And it has permitted a plaintiff to plead quantum meruit and unjust enrichment as alternative (or even inconsistent) legal theories, as Rule 8(d) authorizes. *Id.*

Here, defendants cite no authority explicitly holding that Kansas does not permit alternative pleading of unjust enrichment and quantum meruit claims. Without such authority, the court declines to dismiss the quantum meruit claim as duplicative.[8]

*Second*, defendants argue that Kansas law precludes a quantum meruit claim when a valid written contract exists between the parties—*i.e.*, the Agent Contract. Indeed, our court has held that, in Kansas, "quantum meruit and restitution are not available theories of recovery when a valid, written contract addressing the issue exists." *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) (citing and quoting *Whan v. Smith*, 285 P. 589, 591 (Kan. 1930) ("'[Q]uantum meruit . . . is only available in case the contract is void,

---

[8]     Defendants' Reply asserts that, even if quantum meruit is a distinct legal theory under Kansas law, plaintiffs' Complaint fails to plead facts supporting such a distinct, legal claim. Doc. 54 at 43. Our court "generally refuse[s] to consider issues raised for the first time in a reply brief." *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) (citations omitted); *see also Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance."). And on its merits, this argument isn't persuasive. The Complaint alleges facts supporting the elements of a quantum meruit claim. In Kansas, a quantum meruit claim requires: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated and has knowledge of the benefit; and (3) the defendant accepted and retained the benefit under circumstances that make the retention unjust." *Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs of Cty. of Wabaunsee*, 327 P.3d 430, 441 (Kan. 2014). Plaintiffs' Complaint alleges: (1) Mr. Chavez incurred expenses that defendants should have but did not pay; (2) defendants received substantial benefits from forcing Mr. Chavez to incur the expenses instead of paying the expenses themselves; and (3) defendants accepted and retained the benefits while illegally requiring Mr. Chavez to bear them using the Agent Contract and other policies, procedures, and rules. Doc. 23 ¶¶ 170–185.

unenforceable, rescinded or waived by the party seeking to recover.'"). And our court has dismissed claims premised on quasi-contract theories, like quantum meruit, when the parties do not dispute the existence of a written contract governing the controversy. *See id.* (dismissing restitution claim because the parties agreed that a written contract existed and the written contract governed the dispute); *see also Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1150–51 (D. Kan. 2006) (dismissing unjust enrichment claim because plaintiff could not use that theory to enforce the contractual duties imposed upon defendant by the parties' agreement).

Nevertheless, a quantum meruit claim is "available as a measure of damages when a contract is void, unenforceable, rescinded, or waived by the party seeking to recover." *Delta Grps. Eng'g, Inc. v. Sprint Spectrum, L.P.*, 229 P.3d 420, 2010 WL 1882143, at *6 (Kan. Ct. App. May 6, 2010) (unpublished table opinion). So, our court has permitted plaintiffs to assert quantum meruit claims as an alternative to a breach of contract claim when the parties have not stipulated to the existence of an enforceable contract between them. *See Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1143 (D. Kan. 2010); *see also U.S. ex rel. W. Extralite Co. v. Mohan Constr., Inc.*, No. 11-2491-JAR-KGG, 2012 WL 907088, at *3 (D. Kan. Mar. 15, 2002).

Here, the parties have not stipulated—at least not expressly—that a valid and enforceable contract exists between them that governs the dispute. To the contrary, plaintiffs' Complaint pleads that the Agent Contract is "void as against public policy and therefore unenforceable" because it fails to recognize plaintiffs' employment status. Doc. 23 ¶ 172. The Complaint also alleges that the Agent Contract "is an unconscionable contract of adhesion, which is unenforceable as contrary to the public interest, policy and law." *Id.* ¶ 173. Accepting these allegations as true—as the court must on a motion to dismiss—plaintiffs have alleged that the

contract is void and unenforceable.  Thus, the court follows the cases above that have allowed

plaintiffs to plead quantum meruit claims when the record is not yet clear that a valid and

enforceable contract exists.  And it declines to dismiss Mr. Chavez's quantum meruit claim for

this reason.

*Finally*, defendants assert that the rescission claim is barred because plaintiffs ratified and

accepted the benefits of the Agent Contracts that they seek to rescind.  Doc. 32 at 36.  Plaintiffs

never respond to this argument.  Their Opposition mentions rescission just once—asserting that

they request rescission as a remedy.  Doc. 41 at 58.  As defendants acknowledge, plaintiffs'

Complaint never seeks rescission of the Agent Contracts explicitly.  *See* Doc. 23 at 47 (reciting

the term "rescission" in the Count IV heading but nowhere else in the Complaint).  And, more

importantly, plaintiffs don't respond substantively to defendants' argument that Kansas law bars

plaintiffs' rescission claim.  The court thus assumes that plaintiffs have abandoned their request

for rescission.  *See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001)

(affirming district court's dismissal of plaintiff's equal protection claim after it concluded that

plaintiff had abandoned the claim because he had not addressed it in his memorandum opposing

summary judgment); *see also C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1337 (D. Kan.

2008) (concluding that plaintiff had abandoned his retaliation claim by not responding to

defendant's motion for summary judgment against the claim).

Also, as defendants explain, other courts have rejected requests to rescind employment

agreements after execution because it is difficult to restore the parties to their pre-contract

positions.  *See Baker v. Penn. Mut. Life Ins. Co.*, 788 F.2d 650, 661 (10th Cir. 1986) (recognizing

difficulty of ordering rescission, especially when plaintiff had failed to "explore the subject of

income which he received under the contract both before and after termination, or the subject of

restoration of the status quo"); *Miller v. U.S. Foodservice, Inc.*, 361 F. Supp. 2d 470, 485 (D. Md. 2005) (denying rescission of fully performed employment agreement because "equitable rescission is impracticable in this case because it is not possible for the companies to restore to [plaintiff] the services he rendered to them").

For all these reasons, the court dismisses the request for rescission as a form of relief. But it does not dismiss the quantum meruit claim. Plaintiff Chavez has stated a claim for quantum meruit that seeks relief—not in the form of rescission—but in the form of damages for lost business expenses and the quantum meruit value of services. Doc. 23 ¶ 179.

## IV.    Conclusion

For reasons explained above, the court grants defendants' Motion to Dismiss in part and denies it in part. The court dismisses the following claims from the action: plaintiffs' RICO (Count I) and declaratory relief (Count VI) claims, and plaintiff Tronsgard's KWPA, quantum meruit, and unjust enrichment claims.

The following claims remain in the case: plaintiffs' ERISA claim (Count II), and plaintiff Chavez's KWPA (Count III), quantum meruit (Count IV), and unjust enrichment (Count V) claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 31) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 25th day of April, 2018, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
